FILOMENA SEPÚLVEDA, recurrente, v. EL REGISTRADOR DE LA PROPIEDAD DE MAYAGÜEZ, recurrido.

No. 883.—*Sometido:* Enero 19, 1933. *Resuelto:* Febrero 7, 1933.

*A. Arroyo Rivera,* abogado de la recurrente; el registrador recurrido compareció por escrito.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

El 15 de octubre de 1931 comparecieron ante notario público Primitivo Martínez y su esposa doña Jovita Valle de una parte y de la otra doña Filomena Sepúlveda viuda de Torres y otorgaron un contrato en el cual se hizo constar que Eloy Roldón siguió una acción en cobro de dinero contra la Sucesión Torres vendiéndose para satisfacer la sentencia favorable que obtuvo una finca de veinte cuerdas con casa de vivienda perteneciente a dicha Sucesión; que la finca vendida fué adquirida por Juan Mari a quien se la compraron los esposos comparecientes Martínez-Valle; que al intentar tomar posesión de la finca, la otra compareciente Sra. Viuda de Torres se opuso, alegando su derecho de hogar seguro;

que los comparecientes zanjaron sus diferencias separando una porción de tres cuerdas con la casa que valoraron en quinientos dólares que quedaría en poder de la viuda como hogar seguro. La cláusula sexta del contrato dice textualmente:

"Sexto: La viuda Doña Filomena Sepúlveda inscribirá en el Registro de la Propiedad la presente escritura de segregación y adjudicación de *Homestead,* y se hace constar que dicha viuda por su derecho propio y en representación de sus menores hijos se da por pagada de todo derecho en la finca antes descrita quedando el remanente de la finca íntegramente de la propiedad del Señor Martínez, y obligado el Señor Martínez a seguir pagando la hipoteca del Federal Land Bank, y sin obligación ninguna la viuda de satisfacer nada al acreedor hipotecario sino que dicha deuda corresponde íntegramente al Señor Martínez."

Presentada la escritura en el registro el 9 de diciembre de 1932 el registrador denegó su inscripción por medio de una nota que en lo pertinente dice:

"Denegada . . . por cuanto se expresa en el documento, en su cláusula sexta, que el señor Martínez queda obligado a pagar la hipoteca del Federal Land Bank y sin obligación ninguna la viuda de satisfacer nada al acreedor The Federal Land Bank, sino que dicha deuda corresponde íntegramente al señor Martínez, sin que haya comparecido el dicho acreedor Federal Land Bank of Baltimore a prestar su consentimiento a ese contrato, . . ."

No conforme la Señora Sepúlveda recurrió para ante este Tribunal. Sostiene que el registrador erró al denegar la inscripción:

"1.—Porque el pacto contenido en la Cláusula sexta constituye una *obligación puramente personal* entre las partes contratantes, que en nada afecta ni puede afectar a los derechos de terceros; y no existe prohibición alguna ni en la Ley Hipotecaria, ni en ninguna otra ley, de incluir tales pactos u obligaciones de carácter puramente personal.

"2.—Porque por el referido pacto no se intenta, ni se pretende siquiera, una novación de la primitiva obligación hipotecaria constituída por la recurrente a favor de su acreedor The Federal Land Bank.

"3.—Porque en todo caso la recurrente no ha renunciado en favor de su acreedor The Federal Land Bank of Baltimore el derecho a reclamar contra dicho acreedor su derecho o exención de *Homestead*. La renuncia sólo tiene efecto en cuanto al transmitente Sr. Primitivo Martínez."

El registrador impugna esos errores en un alegato que extractado por nosotros lee como sigue:

"Como de acuerdo con el artículo 1228 del Código Civil, no hay contrato sino cuando concurren los requisitos de consentimiento de los contratantes, objeto cierto que sea materia del contrato y causa de la obligación que se establece, cuando examinamos el que es objeto de dicha escritura No. 198, nos encontramos con que el fin principal que los contratantes se propusieron . . . fué trasmitir el vendedor señor Martínez a la recurrente viuda señora Filomena Sepúlveda dicha finca . . . segregada . . . en pago de una reclamación de *Homestead* . . . estipulando . . . que (la Sra. Sepúlveda) se da por pagada de dicha reclamación de Hogar Seguro, quedando el remanente de dicha finca principal íntegramente del vendedor señor Martínez y obligado éste a seguir pagando la hipoteca de que antes se hace mérito a dicho Federal Land Bank of Baltimore y sin obligación ninguna la viuda recurrente de satisfacer nada al acreedor hipotecario, sino que dicha deuda corresponde íntegramente al señor Martínez.

"Este fin expuesto, constituye la causa del contrato y es su razón esencial; pero como dicha expresada causa en este caso es aparente e ilusoria, toda vez que la recurrente no puede adquirir la finca que se le trasmite, libre de dicha hipoteca a favor del Federal Land Bank of Baltimore, sin el consentimiento de éste, no existe causa y la falta de ella produce la nulidad de la obligación contractual por viciar el consentimiento; además, para la efectividad y perfectibilidad del contrato se le ha incorporado como causa dicha cláusula sexta, que es una obligación condicional del vendedor señor Martínez de pagar la hipoteca al referido Banco basada en un hecho futuro e incierto y es manifiesto que mientras esa condición no se cumpla la voluntad tampoco se realiza, porque si la causa está por venir y de su realización pende la eficacia del contrato, es inconcuso que tal promesa por sí misma carece de causa. Por tanto, se debe estar a lo que dispone el artículo 1242 del Código Civil: 'Los contratos sin causa o con causa ilícita no producen efecto alguno'; de ahí la razón de haberse denegado la inscripción de dicha escritura de compraventa No. 198, por falta del consentimiento del referido acreedor hipotecario.

"Insistiendo sobre la falta de causa . . . se expone que esa obligación no puede estimarse como una personal que pudo ser omitida en la inscripción del contrato, por el contrario, es evidente que la naturaleza de esa obligación es real por afectar a derecho de ese linaje y es el alma de la convención porque la intención . . . de la recurrente contemplaba la adquisición del bien, libre de gravámenes a título de Hogar Seguro . . . para lo cual prestó su consentimiento que resulta viciado por lo aparente e ilusorio de la causa, (porque) . . . mientras no se verifique tal pago, (la hipoteca) sigue a la finca en su totalidad como la sombra al cuerpo no importa lo que en contrario convinieren los otorgantes . . . (y) a tenor de lo dispuesto en el artículo 105 de la Ley Hipotecaria, en concordancia con el No. 9 de la misma y 63 de su Reglamento, el Registrador de la Propiedad debe arrastrar las cargas que en su totalidad pesan sobre la finca principal para consignarlas como gravámenes que deben pesar sobre las fincas segregadas de aquélla, sean cuales fueren; . . . Si apuramos la materia para pensar que en dicha cláusula sexta . . . existe una novación de contrato impuesto por las partes sin el consentimiento del referido acreedor, según el No. 2 del artículo 1171 de dicho Código, entonces debe estarse a lo dispuesto en el artículo 1173 de dicho cuerpo legal, que la prohibe sin el consentimiento del acreedor y es nula por serlo también la obligación primitiva de la que procede y como esa novación forma también parte de la causa del contrato, ésta no existe, y por tanto dicha convención no tiene vida o eficacia legal para producir su inscripción en el Registro . . . Por vía de ilustración y por tratarse de un caso parecido al que nos ocupa, deseo citar la resolución que tiene ODRIOZOLA en su tratado de jurisprudencia, página 640, que dice: 'Cuando en una escritura se redime, en cuanto a una parte de una finca, el censo que se impuso sobre la totalidad de dicha finca, es, por tanto, indudable que se está en el caso primero del artículo 1203 del Código Civil (1171 nuestro), puesto que se modifica una condición principal de la obligación, cual es la de que el censo había de gravar toda la finca, produciéndose una verdadera novación, que como tal, ha de verificarse con el consentimiento de todos los interesados (RES. de 10 de noviembre de 1906.)' . . ."

A nuestro juicio no está desprovista de fundamento la nota del registrador. La defensa que de la misma hace dicho funcionario revela un cuidadoso estudio. El caso no es sencillo en verdad, pero basándonos en el principio de la

libertad de contratación, y pudiendo verificarse la inscripción haciendo constar con toda claridad el hecho de no haber intervenido en el contrato el acreedor hipotecario, arrastrando el gravamen a la finca segregada, nos inclinamos a concluir que la inscripción es procedente.

El propio registrador admite que si el acreedor hipotecario hubiera intervenido en la convención y hubiera prestado su consentimiento, el contrato sería perfecto. No intervino y no puede ser perjudicado en modo alguno, debiendo dejarse a salvo sus derechos, pero ello no quiere decir que el dueño de la finca hipotecada a virtud de compra al que la adquirió en pública subasta no pueda zanjar sus diferencias con la primitiva dueña reconociéndole su derecho de hogar seguro libre del gravamen hipotecario hasta donde pueda hacerlo. Si los esposos Martínez-Valle cumplen la obligación que se impusieron y pagan la hipoteca, el contrato produciría todos sus efectos.

No puede sostenerse que la Sra. Sepúlveda fuera engañada. Ella conoce la ley y sabe que el gravamen que pesa sobre la totalidad de la finca no puede cancelarse sobre la porción que se dejó en su poder antes de verificarse su pago, sin el consentimiento del acreedor.

El reconocimiento del derecho de hogar seguro por parte de los esposos Martínez-Valle no obliga necesariamente al banco, pero el que esto sea así, no debe obstaculizar el acuerdo a que llegaran el actual dueño de la finca hipotecada y el antiguo sobre el derecho de éste a permanecer en una parte de la finca. Por lo menos para esas dos personas la convención es válida y como versa sobre un bien inmueble es susceptible de inscribirse en el registro.

*En tal virtud debe revocarse la nota recurrida y ordenarse la inscripción solicitada con el defecto subsanable indicado.*

Los Jueces Asociados Señores Aldrey y Córdova Dávila, disintieron.*

* NOTA: Véase el prefacio.